[No. 11303. Department Two. February 6, 1914.]

D. C. WILLIAMS, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.[1]

MUNICIPAL CORPORATIONS — ACTIONS — CONDITIONS PRECEDENT — CLAIMS—DAMAGES OR CONTRACT. Where a city purchased buildings agreeing to pay a stipulated sum therefor when it took possession or when the property should be abandoned or destroyed, an action to recover the stipulated sum, after the destruction of the buildings by fire, is an action on contract, and not to recover damages, within a charter provision requiring "all claims for damages" against the city to be presented to the city council before action brought.

Appeal from a judgment of the superior court for King county, Tallman, J., entered February 28, 1913, upon findings in favor the plaintiff, in an action on contract. Affirmed.

*James E. Bradford, C. B. White* (*S. V. Carey,* of counsel), for appellant.

*Hastings & Stedman,* for respondent.

FULLERTON, J.—Prior to July 1, 1907, the respondent Williams acquired title to an oblong tract of land lying immediately north of block 2, in D. T. Denny's Second Addi-

[1] Reported in 138 Pac. 300.

tion to North Seattle, in the county of King, state of Washington, which land abutted upon the shore lands of Lake Union. Prior to that date, Williams and his predecessors in interest had constructed thereon "valuable improvements, in aid of trade, commerce and navigation," consisting of a dock and buildings, which dock extended from some point on the uplands across the shore lands down to the navigable waters of the lake. On the date first above given, the board of state land commissioners filed a plat of the shore lands of Lake Union, which designated the shore lands on which the dock was, in part, constructed as block 71; and Williams, in virtue of his upland ownership and the improvements he had made upon the shore lands, was accorded a preference right to purchase the block, and in fact did purchase it sometime in 1909. The platting of the shore lands was made with reference to the establishment of a highway, around a portion of the lake, which followed the general course of the shore lands, and wherever the shore lands were suitable for that purpose, such parts were dedicated by the state for that use; it being contemplated that the city of Seattle would acquire so much of the upland as would be necessary to complete the highway.

On February 15, 1909, the city of Seattle passed an ordinance providing for the completion of the highway thus initiated by the state, at the expense of the property benefited, and directed therein that the corporation counsel take such proceedings in the courts as he found expedient to acquire the lands necessary to complete the highway. Thereupon condemnation proceedings were begun by the corporation counsel for that purpose, in which Williams was made a party defendant, it being found necessary to acquire his upland holdings for the construction of the highway. At the trial of the proceedings, Williams claimed the right to be compensated, not only for the upland taken, but also for the dock and buildings constructed thereon which it would be necessary to destroy in the establishment of the highway. The ordinance provided for the condemnation of land only,

and the city objected to the introduction of any evidence as to the value of the structures, on the ground that the ordinance did not provide for their taking. This objection the trial court sustained, allowing compensation only for the land taken. Williams gave notice of his intention to appeal from the ruling of the trial court, whereupon the city, for the purpose of settling the matter and avoiding further litigation, although not desiring the immediate possession of the property, entered into a contract with him, the material parts of which read as follows:

"Therefore, in consideration of the compromise of all questions now existing between the city of Seattle and the said D. C. Williams relating to the liability of the city of Seattle to pay for the improvements hereinbefore described, and for the further consideration of placing the said city of Seattle in position to take possession and use all that portion of the Southlake avenue adjacent to said block 71 of Lake Union shorelands and northerly and northeasterly of the upland lying north of block No. Two of D. T. Denny's Second Addition to North Seattle, in King county, Washington, and to prevent and avoid any further litigation over said improvements and the delays incident thereto.

"It is hereby agreed that said city of Seattle shall pay, and does hereby agree to pay, to said D. C. Williams the sum of $2,030 for all of the buildings, docks, and improvements now owned by said Williams and situated within the boundaries of Southlake avenue adjacent to block No. 71 of Lake Union shorelands and the uplands lying north of block No. 2 of D. T. Denny's Second Addition to North Seattle, all in Seattle, King county, Washington, and the title and ownership does, in consideration therefor, hereby pass to and become vested in the city of Seattle, and said D. C. Williams does hereby convey, transfer, and set over to said city of Seattle all of the aforesaid improvements consisting of the aforesaid dock and buildings.

"It is further agreed, as a part of this stipulation, that said city of Seattle shall pay interest upon said amount to said D. C. Williams at the rate of seven per cent per annum, payable annually. That said D. C. Williams shall, by himself or his agents, retain possession of said buildings; shall

use reasonable diligence and efforts to keep said premises rented; shall collect the rents from the tenants therein, and, after deducting a commission of five per cent for such services, shall apply the balance thereof upon the payment of the aforesaid amount and the accruing interest thereon, except as hereinafter stated, said rents to begin from May 15th, 1910.

"It is further agreed that no expense for repairs shall be allowed out of the rents and income from said property without the same is first authorized and approved by the superintendent of buildings for the city of Seattle, and when such repairs are so allowed the same shall be paid out of said rents.

"It is further agreed that said Williams, as agent for the city of Seattle, shall endeavor to procure insurance upon said buildings in some company satisfactory to the superintendent of buildings, and all premiums therefor shall be paid out of said rents.

"Unless said amount is so repaid, it is agreed and understood that said purchase price shall be paid at the time of, or before, the city of Seattle shall take possession of said improvements, or sooner if same should be destroyed or abandoned."

The contract was entered into on May 4, 1910, and two days thereafter, on May 6, 1910, the dock was destroyed by fire. Subsequent to the contract and prior to the fire, Williams procured insurance on the buildings in the sum of two thousand dollars, turning over the policies representing the same to the city. Due proof of loss was made by the city to the insurance companies, but payment thereof was refused on the ground that combustible material was kept in the buildings contrary to the terms of the policies. The city did not sue on the policies within the time limited therein, deeming the objection of the insurance companies well taken, whereupon Williams instituted the present action upon the contract. The city defended on a number of grounds, among which was the ground that no claim for the sum demanded was presented to the city council of the city of Seattle within thirty days after the destruction of the buildings in pur-

suance of the clause of the city charter relating to claims for damages against the city. Judgment went against the city, from which it appeals, assigning, as its sole error, the want of presentation of the claim.

The full text of the charter provision on which the city relies will be found quoted in *Jurey v. Seattle*, 50 Wash. 272, 97 Pac. 107. Its salient provision is that "All claims for damages against the city must be presented to the city council and filed with the clerk within thirty days after the time when such claim for damages accrued." It is the contention of the city that the present action is one sounding in damages, and one which cannot be prosecuted without a prior presentation of a claim therefor for allowance or rejection.

The cases of *Jurey v. Seattle, supra,* and *International Contract Co. v. Seattle,* 69 Wash. 390, 125 Pac. 152, are relied upon to maintain the contention. The first case was an action to recover a sum applicable to the payment of a warrant drawn against a special fund of the city, which fund the city had diverted to other uses. The court held the action to be one in damages for which a claim must be presented; saying, in the course of the opinion, that the action was not based upon the warrant, but upon the wrong of the city in diverting the funds, and as such was an action in damages. In the second case, the city had let a contract to do certain street work. The work was to be paid for by special assessment on property benefited, and was interrupted by the city and finally stopped by it on account of objections made by interested property holders. The action was brought for a breach of the contract, and the court held it to be an action in damages for which a claim must be presented as a prerequisite to an action. In the opinion it was said (see the case on rehearing, *Id.,* 74 Wash. 662, 134 Pac. 502) that there was a difference between an action on contract and a claim for damages arising out of a breach of a contract; that,

"The test is, whether the proof of the contract and a breach thereof would make a *prima facie* case. If so, no claim need be filed. If proof of damages independent of the contract must be made, the case falls within the words of the charter, and must fail if the claim is not presented."

In the present case, the city purchased property of the respondent agreeing to pay for the same a stipulated sum upon the happening of one of three contingencies, namely, when it should take possession of the property, or when the property should be abandoned or destroyed. A contingency on which the money became payable happened—the property was destroyed by fire—and the respondent sued to recover the stipulated sum agreed to be paid for the property. Clearly the action is one upon contract, as much so as is an action upon a promissory note, or other direct promise to pay money. It is thus distinguishable from the cases cited, and does not fall within the rule contended for by the city.

The judgment is affirmed.

CROW, C. J., PARKER, MORRIS, and MOUNT, JJ., concur.